Henderson SUPPLEE, Jr.,

v.

Francis R. SMITH, Collector of Internal Revenue for the First District of Pennsylvania, Appellant.

No. 11984.

United States Court of Appeals Third Circuit.

Argued Nov. 15, 1956.

Decided March 28, 1957.

I. Henry Kutz, Washington, D. C., (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

Joseph W. Price, 3d, Philadelphia, Pa. (Sanford D. Beecher, Morris Duane, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The appeal at bar deals with the application of Section 1000(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. (I.R.C.1939) § 1000(e).

The taxpayer, Supplee, created three individual trusts for his three children on December 23, 1935. It is agreed that Supplee retained power to change the beneficiaries or their interests in the *res* but retained no power to revest the property in himself. See Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 and Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77. It is clear also that the

interests of beneficiaries could be changed by incidents not within the control of the settlor and physical enjoyment by the beneficiaries was postponed. See Fondren v. Commissioner, 1945, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668, and Commissioner of Internal Revenue v. Disston, 1945, 325 U.S. 442, 65 S.Ct. 1328, 89 L. Ed. 1720.

The settlor made gifts of property and cash to each of the trusts of the value of $4,657.13, $2,899.50, $4,129.50, $361.-50, and $361.50 in the years 1936, 1937, 1938, 1939, and 1940, respectively. Gift-tax returns were filed by the settlor for the years 1939 and 1940. He paid no gift taxes upon the transfers made in the years 1936, 1937 and 1938, nor were any taxes due from him, as he conceived the state of the law to be. He did not make any gift-tax returns for the three years last named.

Prior to the due dates for filing gift-tax returns for the three years, '36, '37 and '38 Supplee was advised by his former counsel that as each transfer was in an amount less than the exclusion provided for by Section 504(b) of the Revenue Act of 1932, 47 Stat. 247, 26 U.S. C.A. Int.Rev.Acts, page 585, no returns were required for gift-tax purposes, and therefore no gift-tax returns were filed by Supplee for the three years.

In 1946 Supplee was advised by new counsel that because of the decision of the Supreme Court in Estate of Sanford v. Commissioner and Rasquin v. Humphreys, supra, the transfers of property by him to the trusts did not constitute completed gifts as the taxpayer had supposed and intended.

On August 1, 1946 Supplee executed the necessary instruments to terminate the trusts and the property within the trusts was transferred absolutely to the beneficiaries. Supplee filed gift-tax returns for the calendar year 1946 in which he reported the gifts as of the time of the termination of the trusts in 1946 and paid the tax then due.

On December 23, 1947 the taxpayer filed with the Commissioner an agreement pursuant to Section 1000(e) of the Internal Revenue Code of 1939 in which he consented to recognize the transfers made in 1936 through and including 1940 as being complete for all the purposes required by Chapter 4 of the Internal Revenue Code. The taxpayer then filed a claim for refund for the amount of the gift taxes paid by him for the calendar year 1946 on the ground that he was entitled to the refund provided for in Section 1000(e). The Commissioner disallowed Supplee's claim. Supplee then filed his complaint in the court below demanding the sum of $15,108.75 with interest from the date of payment. This amount represented the sum of the gift tax paid by him on $72,188.39, the value of the property in the trusts conveyed absolutely to the beneficiaries on August 1, 1946. Both Supplee and the Collector moved for summary judgment. The court below granted the taxpayer's motion and in its opinion [1] provided that its finding in favor of the taxpayer should be conditioned upon the filing of gift-tax returns and the payment of gift taxes with interest for 1936, 1937 and 1938. The adjusted amount of the judgment in favor of the taxpayer was $11,392.20. The Collector appealed.

Under Section 507(a) of the Revenue Act of 1932, 47 Stat. 248, 26 U.S.C. A. Int.Rev.Acts, page 588,[2] any individual who within the calendar year 1932 or any calendar year thereafter made any

---

1. Not reported for publication.

2. Section 507(a) stated:
   "Any individual who within the calendar year 1932 or any calendar year thereafter makes any transfers by gift (except those which under section 504 are not to be included in the total amount of gifts for such year) shall make a return under oath in duplicate. The return shall set forth (1) each gift made during the calendar year which under section 504 is to be included in computing net gifts; (2) the deductions claimed and allowable under section 505; (3) the net gifts for each of the preceding calendar years; and (4) such further information as may be required by regulations made pursuant to law."

transfers by gift, except those which under Section 504 were not to be included in the total amount of gifts for each such year, was required to make a gift-tax return. Section 504(b) of the Revenue Act of 1932 provided that: "In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year." Reading Section 504(b) and Section 507 together it will be observed that if the gift was less than $5,000 and was not of a future interest no return had to be made.

Until the decision of the Supreme Court in Sanford in 1939 the Treasury took the position, and it was generally regarded as the law, that where the settlor of an *inter vivos* trust reserved no power to return the *res* to himself, an

irrevocable transfer in trust was complete even though the settlor had reserved the power to shift enjoyment among beneficiaries. The Treasury Regulations show this beyond possibility of successful contradiction.[3] Following Sanford many settlors of trusts *inter vivos*, like Supplee, found themselves in the position where gifts which they had thought, and had been advised, were complete could no longer be deemed to be so as a matter of law, and the settlors would be liable for gift taxes upon completion of the gifts.

■ Viewing the instant case only from the point of view of Sanford we come now to the provisions of Section 1000(e)[4] of the Internal Revenue Code of 1939 as the taxpayer seeks to apply them. Section 1000(e) was designed as a remedial statute. Its provisions are for the relief of taxpayers; its purpose, to obviate inequities that Congress concluded had resulted from the Sanford

3. Treasury Regulations 79, Art. 3, 1936 ed., provided in pertinent part: "As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself, the gift is complete."

4. The provisions are as follows:
Chapter 4—Gift Tax Sec. 1000. Imposition of Tax
"(e) [as added by Sec. 502(a) Revenue Act of 1943, c. 63, 58 Stat. 21, and as amended by Sec. 2(a), Joint Resolution of June 25, 1947, c. 143, 61 Stat. 178] *Certain discretionary trusts*. In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after January 1, 1940, and on or before December 31, 1947 (or on a later date in any case where it is shown to the satisfaction of the Commissioner, in accordance with regulations prescribed by him with the approval of the Secretary, that failure to relinquish prior to such later date was for reasonable cause) of power or control with respect to the distribution. of such property or the income therefrom by an exercise or other termination of such power or control shall not be deemed a transfer of property for the purposes of this chapter. If such property was transferred in trust, the grantor not retaining such power to revest title thereto in himself, or if such power to revest title to such property in the grantor was relinquished, while a law was in effect imposing a tax upon the transfer of property by gift, this subsection shall apply only if (1) gift tax was paid with respect to such transfer or relinquishment, and not credited or refunded, or a gift tax return was made within the time prescribed on account of such transfer or relinquishment but no gift tax was paid with respect to such transfer or relinquishment because of the deductions and exclusions claimed on such return, and (2) the grantor consents, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, for all purposes of this chapter to treat such transfer or relinquishment in the calendar year in which effected, and for all periods thereafter, as having been a transfer of property subject to tax under this chapter. This subsection shall not apply to any payment or other disposition of income occurring prior to the termination of power or control with respect to the future disposition of income from the trust property." 26 U.S.C.A. (I.R.C. 1939) § 1000(e).

decision.[5] Section 1000(e) provides only that if relief is sought under it earlier transfers which would have been deemed to be complete, had it not been for Sanford, should be considered to have been complete, if the donor could bring himself within the provisions of the section.

It will be observed that two conditions are imposed in the alternative by the statute. It states that its provisions shall be applicable only if a gift tax was paid with respect to the transfer or if a gift-tax return on account of the transfer was made within the time prescribed. As we have stated Supplee did not pay any gift tax nor did he file any gift-tax return.[6] The Commissioner now asserts that because Supplee failed to make the returns he cannot bring himself within the purview of Section 1000(e) and therefore cannot procure for himself the benefits of the section. It is conceded by the Commissioner, insofar as the Sanford situation is concerned, that if Supplee had filed the returns he could avail himself of the provisions of Section 1000(e). The point that the Commissioner makes is indeed a narrow one but Congress has laid down very definite conditions under which the remedies of Section 1000(e) are operable. Those terms do not admit of judicial legislation. We are therefore, however reluctantly, forced to the conclusion that the court below erred in granting Supplee the relief which he seeks by his suit.

Moreover, other circumstances, which we may refer to here as the Fondren-Disston situation, arise to defeat the taxpayer's claim. Assuming *arguendo* that the court below was correct in its interpretation that the filing of returns are a condition for the application of the provisions of Section 1000(e) only where the law requires the filing of such returns, the literal language of the section being to the contrary in our view, Supplee still fails to bring himself within the provisions of the section so as to receive its benefits. It was the law in the taxable years with which we are concerned, in this circuit, prior to the decisions of the Supreme Court in the Fondren and Disston cases, that a gift to a trust, even if there was no immediate physical enjoyment by the beneficiaries, was not a gift of a future interest. We so held in Commissioner of Internal Rev-

5. The legislative history demonstrated this. See report of Senate Finance Committee as follows (S.Rep. No. 627, 1944 Cum.Bull. pp. 1040, 1041):

"This section * * * is designed to prevent inequities in certain instances affected by the decisions of the United States Supreme Court in Estate of Sanford v. Commissioner (308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20) and Rasquin v. Humphreys (308 U.S. 54 [60 S.Ct. 60, 84 L.Ed. 77] (November 6, 1939) ). The Supreme Court held in these cases that where a grantor of a trust retained a power to change the beneficiaries or their interests therein but reserved no power to revest the property in himself, the gift was incomplete, and that the gift would be completed and the gift tax would apply upon the relinquishment of such retained power. Prior to these decisions a number of grantors assumed that in such cases the gift was completed for purposes of the gift tax when the trust became irrevocable, either at the time it was created if the grantor then retained no power to revest the property in himself, or if he retained the power to revest the property in himself, at any subsequent time when such power was relinquished.

"Many persons established trusts prior to the aforementioned Supreme Court decisions, retaining the power to change the beneficial interests but without reserving the power to revest the property in themselves, believing that gifts were thereby consummated and that no gift tax liability would thereafter result upon the relinquishment of such retained power. * * * Your committee believes it inequitable to impose a tax in such instances upon the subsequent relinquishment of the power to change the beneficiaries or their interests, unless the grantor is allowed an opportunity within a specified period to release such power without a resulting tax liability."

6. Had the amount of the annual transfers to each trust been $5,000.01, putting to one side the Fondren-Disston situation, Supplee doubtless would have filed returns and would have paid a tax on 3¢ for the years in question.

enue v. Krebs, 3 Cir., 1937, 90 F.2d 880, criticized at least, if not overruled, by this court in 1939 in McBrier v. Commissioner, 108 F.2d 967. The Board of Tax Appeals had reached a result similar to that expressed in the Krebs decision on April 10, 1936 in Wells v. Commissioner, 34 B.T.A. 315, and was affirmed in Commissioner of Internal Revenue v. Wells, 7 Cir., 1937, 88 F.2d 339. These holdings were that the gift was to the trust, that the trustee was the donee and since the gift passed immediately to the trust, or to the trustee, present not future interests were always involved.[7]

In 1941 the Supreme Court in Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909, decided that the beneficiaries, and not the trustee, or the trust, were the donees. But in Fondren v. Commissioner and Commissioner of Internal Revenue v. Disston, supra, the Supreme Court held that gifts to beneficiaries not for their immediate enjoyment were gifts of future interests.

It follows that because of the Fondren-Disston decisions of the Supreme Court, authoritatively interpreting the application of federal statutes that it *was* the law that gifts in trust not for immediate enjoyment of beneficiaries were gifts of future interests, as were the gifts made by Supplee in 1936, 1937, and 1938, and should be denied the benefit of the gift tax exclusion as future interests. The rule of the Fondren-Disston cases makes it clear that Supplee was required not only to file gift-tax returns for the pertinent years but also to pay gift taxes. We conclude therefore for these reasons Supplee cannot meet the requirements of Section 1000(e).

The judgment of the court below will be reversed with the instruction to enter judgment in favor of the Collector.

---

**7.** Congress amended Section 504(b) by Section 505(a) of the Act of May 28, 1938, 52 Stat. 565, 26 U.S.C.A. Int.Rev. Acts, page 1139, so that the gift tax exclusion was withheld from the gifts in trust as well as "future interests."

The statute in pertinent part provided: "In the case of gifts (other than gifts in trust or of future interests in property) made to any person by the donor during the calendar year, the first $4,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

But Section 505(b), specifically provides that the amendment shall be applicable only to 1939 and subsequent years and not to 1938 and previous years.